IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO HATCHER, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SCM GROUP NORTH AMERICA, INC., | : | No. 15-1630 |
| Defendant. | : | |

<u>MEMORANDUM</u>

**Schiller, J.**                                                                                             **March 1, 2016**

Antonio Hatcher injured three fingers while working with an industrial woodworking machine and sued the machine manufacturer, SCM Group North America, Inc. ("SCM"), for breach of warranty, defective manufacturing, defective design and failure to warn.

SCM has moved for summary judgment. For the following reasons, this Court will grant summary judgment.

**I.      BACKGROUND**

Hatcher was injured on September 27, 2014, at the Timberlane, Inc., plant in Montgomeryville, Pennsylvania, where he was a machinist. (Def.'s Statement of Undisputed Facts ¶¶ 2, 26.) He was feeding a piece of wood into an industrial woodworking machine called a T130 Shaper when his hand slipped, causing three fingers to strike the spinning blade. (*Id*. ¶¶ 1-2.) The entire incident was captured on camera. (*Id*. ¶ 3.)

**A.      T130 Shaper**

The T130 Shaper is a multipurpose woodworking machine made by SCM. (*Id*. ¶ 6.) Timberlane purchased this machine at an auction in the late 1980s. (*Id*. at ¶ 7; Def.'s Mem. at 22.) The T130 Shaper's safety devices include: (1) two wooden fences on the left and right sides

of the blade to provide support while feeding wood into the machine; and (2) a spring steel safety guard ("blade guard") that partially covers the spinning blade. (Def.'s Statement of Undisputed Facts ¶¶ 8-9, 14, 16.) The fence system has an opening in the middle where the blade located. (*Id.* ¶ 10.) The blade guard fits into pre-drilled holes on the fence system above the blade. (*Id.* ¶ 16.)

The fence system and the blade guard are adjustable and removable. (*Id.* ¶¶ 17, 19.) The blade guard is removable because it cannot be used for some applications. (*Id.* ¶ 17.) The operator must reposition the blade guard for each different application to ensure that the blade is exposed no more than necessary. (*Id.* ¶ 14.)

On the front of the machine, there is a black warning label that states, in capital letters, "DON'T RUN THE MACHINE WITHOUT NECESSARY SAFETY GUARDS." (*Id.* ¶ 20.) The accompanying operation and maintenance manual explains in detail how to use and assemble each of the safety guards, including the fence system and the blade guard. (*Id.* ¶ 16.) The manual warns, "Before starting machine, make sure all guards are in place." (*Id.* ¶ 21.)

B.  **September 27, 2014 Accident**

On September 27, 2014, the day of the accident, Hatcher volunteered to help his coworker, Nathan Try, operate the T130 Shaper. (Pl.'s Statement of Disputed Facts ¶ 26.) Try set up the machine by inserting the cutterhead at the correct height and adjusting the fences to the correct depth. (Def.'s Statement of Undisputed Facts ¶¶ 30-32.) The fences were configured in the "zero-clearance" position for maximum safety, but the blade guard was not in use. (*Id.* ¶ 32; Pl.'s Statement of Disputed Facts ¶ 32.)

Hatcher began feeding a plank of cedar wood into the machine. (Def.'s Statement of Undisputed Facts ¶ 33.) The plank was 3/4 of an inch thick, leaving 1/8 of an inch of the

spinning blade exposed above the surface of the plank as the plank passed through the blade. (*Id*.) Hatcher had completed roughly 25% of the cut on one side of the plank when his hand slipped. (*Id*.) The tips of three fingers made contact with the blade, causing open fractures and lacerations to the index, middle and ring fingers on his left hand. (*Id.* ¶ 35; Pl.'s Mem. at 2.)

### C. Training, Knowledge and Safety Precautions at Timberlane, Inc.

Timberlane hired Hatcher three months before the accident to operate the beam saw in the machine shop. (Def.'s Statement of Undisputed Facts ¶ 26.) Although Hatcher had extensive experience with power tools, he had operated the T130 Shaper only once before the accident. (Pl.'s Add'l Facts ¶ 1.) Hatcher did not receive any formal training on the machine, aside from a demonstration with verbal instructions by Try, the primary operator of the T130 Shaper, on the day of the accident. (*Id.* ¶ 4.)

Before the accident, neither Hatcher nor Try had ever read the operating manual, which explains in detail how to use the necessary safety guards, including the blade guard; Hatcher also admits he never read the warning on the machine that stated, "DON'T RUN THE MACHINE WITHOUT NECESSARY SAFETY GUARDS." (*Id*. ¶¶ 36, 37; Pl.'s Add'l Facts ¶ 4.) Moreover, Hatcher, Try and Jeffrey Crescenzo, Timberlane's plant manager, have each stated in depositions that they never knew about the existence of the blade guard, which was not in use at the time of the accident. (*Id*. ¶ 6.) Aside from Hatcher's injuries, Timberlane has not had any problems with the machine since purchasing it at an auction over twenty-five years ago. (Def.'s Statement of Undisputed Facts ¶ 40.) Crescenzo and Try testified that they still believe, despite the accident, that the machine is safe to use without the blade guard, and that it was set up properly on the day of the accident. (Try Dep. at 49:3-8; Crescenzo Dep. at 32:5-9.) For his part, Hatcher states that the blade guard would have prevented the injury, and he claims that he would

3

not have used the machine without the blade guard if he had known it existed. (Def.'s Statement of Facts ¶¶ 38, 41.)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The moving party bears the burden of showing that the record reveals no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 247. Once the moving party has met its burden, the nonmoving party must go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "Such affirmative evidence— regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

A court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d

Cir. 1991). If the nonmoving party's evidence "is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

### III.   DISCUSSION

Hatcher initially presented four claims in the Complaint: (1) breach of express and implied warranties; (2) defective manufacturing; (3) defective design; and (4) failure to warn. Hatcher now concedes there was no manufacturing defect, and he does not dispute SCM's evidence that the breach of warranty claim is time barred. Additionally, Hatcher fails to distinguish between the defective design claim and failure-to-warn claim, offering no evidence to support an independent defective design claim. His failure-to-warn claim likewise fails because the danger of the spinning blades was open and obvious, and the existing warnings adequately addressed the danger of operating the machine without safety guards. Accordingly, this Court will grant summary judgment to SCM.

#### A.   Breach of Express and Implied Warranties

Hatcher alleged in the Complaint that SCM "violated its implied and express warranties to [him] by designing, manufacturing, distributing and selling a [defective machine]." (Compl. ¶ 15.) This claim is barred by the statute of limitations, because Hatcher filed this lawsuit more than four years after Timberlane purchased the machine. Under Pennsylvania law, the statute of limitations for breach of express or implied warranties is four years. 13 Pa. Cons. Stat. §§ 2725(a), (b). The limitations period begins when the seller tenders the goods. *Id*; *see also Nationwide Ins. Co. v. Gen. Motors Corp.*, 625 A.2d 1172, 1174 (Pa. 1993) ("[A] breach of warranty action accrues on, and suit must be filed within four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered.").

Here, Timberlane purchased the T130 Shaper at an auction in the late 1980s, and Hatcher did not sue until March 30, 2015. (Def.'s Mem. at 22.) Therefore, the Court will grant summary judgment to SCM on the breach of warranty claims.

### B.  Defective Manufacturing

In the Complaint, Hatcher alleged that the T130 Shaper was "defectively manufactured." (Compl. ¶ 9.) Hatcher now admits, however, that "[T]here was nothing mechanically wrong with the Shaper and it did not malfunction." (Def.'s Statement of Undisputed Facts ¶ 39; Pl.'s Statement of Disputed Facts ¶ 39.) In the same vein, Hatcher's co-workers testified that the machine worked properly and never malfunctioned. (Def's Statement of Undisputed Facts ¶ 40.) Hatcher has not countered this evidence. Therefore, the Court will grant summary judgment to SCM as to the defective manufacturing claim.

### C.  Defective Design

Hatcher fails to produce any evidence to support his defective design claim, relying to his detriment on an unsworn expert report prepared by Craig Clauser, an engineer, which conflates failure-to-warn defects with design defects. (Pl.'s Mem. Ex. 4 [Clauser Rep.].) There are two problems with Clauser's report. First, this report is not competent for consideration at summary judgment, because it provides neither an affidavit nor an acceptable alternative "subscribed in proper form as true under penalty of perjury to substitute for an affidavit." Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment; *see also* 28 U.S.C. § 1746; *Burrell v. Minnesota Min. Mfg. Co.*, Civ. A. No. 08-87293, 2011 WL 5458324 at *1 (E.D. Pa. June 9, 2011). The expert report is signed without any further attestation, which is not sufficient under the Federal Rules. *See Burrell*, 2011 WL 5458324, at *1 n.1.

Second, even if the Court considered Clauser's report, it offers no evidence to support a defective design claim that is distinct from the failure-to-warn claim. In particular, Hatcher relies on a passage from the report in which Clauser states that "the shaper was defectively designed in that it did not include a clear and obvious warning." (Clauser Rep. at 3.) The failure to "include a clear and obvious warning" is a failure-to-warn claim. While Pennsylvania courts in the past have treated failure-to-warn claims as a category of defective design claims, this does not mean that every failure-to-warn claim automatically gives rise to a supplemental design defect claim. *See Dambacher v. Mallis*, 485 A.2d 408, 426 (Pa. Super. Ct. 1984). Here, Hatcher offers no evidence of defective design beyond the allegations in the Complaint. Therefore, the Court will grant summary judgment to SCM as to the defective design claim.

**D.     Failure to Warn**

Pennsylvania recognizes strict liability for failure to warn under the Second Restatement of Torts. *See Pavlik v. Lane Ltd.,* 135 F.3d 876, 881 (3d Cir. 1998). According to the Third Circuit, "[A]n otherwise properly designed product may still be unreasonably dangerous (and therefore 'defective') for strict liability purposes [in Pennsylvania] if the product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the product." *Id.* (citing Restatement (Second) of Torts § 402A). To prevail under strict liability, a "plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm." *Riley v. Warren Mfg., Inc.*, 688 A.2d 221, 224 (Pa. Super. Ct. 1997). In a failure-to-warn case, the threshold determination is whether the product is defective for lack of sufficient warnings. A plaintiff therefore must show that the product was sold without sufficient warnings to "adequately notif[y] the intended user of the unobvious dangers inherent in the product." *Mackowick v. Westinghouse Elec. Corp.*, 575 A.2d

7

100, 102 (Pa. 1990). Furthermore, he or she may recover only if "the lack of warning rendered the product unreasonably dangerous." *Baron v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 355 (Pa. Super. Ct. 2015).

> 1. *Deciding the adequacy of a warning after* Tincher

The Pennsylvania Supreme Court's recent decision in *Tincher v. OmegaFlex, Inc.*, 104 A.3d 328 (Pa. 2014), has created some confusion regarding the respective roles of the judge and the jury in making the initial determination about the adequacy of a warning. Before *Tincher*, it was reasonably well settled in Pennsylvania that the adequacy of a warning was a question of law for the court under *Azzarello v. Black Bros. Co.*, 391 A.2d 1020 (Pa. 1978) and *Mackowick v. Westinghouse Electricity Corp.*, 575 A.2d 100 (Pa. 1990). In *Azzarello*, the Pennsylvania Supreme Court created a two-step procedure for adjudicating defective design claims: first, the court determines whether recovery is justified under the plaintiff's averment of the facts; second, if the court determines that recovery is justified under those facts, the jury decides whether the facts alleged by the plaintiff are true. 391 A.2d at 1026. In *Mackowick*, the Pennsylvania Supreme Court extended *Azzarello* to failure-to-warn claims, holding that, "The determinations of whether a warning is adequate and whether a product is 'defective' due to inadequate warnings are questions of law to be answered by the trial judge." 575 A.2d at 102.

In *Tincher*, the Pennsylvania Supreme Court overruled *Azzarello* as applied to defective design claims, holding that the threshold determination of whether a product is defectively designed is an issue "for the finder of fact, whether that finder of fact is judge or jury." *Tincher*, 104 A.3d at 407. Accordingly, the court in *Tincher* held that the question of defectiveness in design should be "removed . . . from the jury's consideration only where it is clear that reasonable minds cannot differ on the issue." *Id.* Citing judicial restraint, however, the court

8

purposely left undecided whether this holding extends to failure-to-warn claims. *Id*. at 409 ("We recognize . . . that the decision to overrule *Azzarello* . . . in relation to claims of a product defective in design may have an impact upon other foundational issues regarding manufacturing or warning claims [but] these considerations and effects are outside the scope of the facts of the dispute.") Indeed, just last month, the Pennsylvania Supreme Court granted allocatur in a case that may resolve whether *Tincher* extends to failure-to-warn claims. Specifically, the question on appeal in *Amato v. Bell & Gosset, Clark-Reliance Corp.*, is: "Whether, under the Court's recent decision in *Tincher* . . . a defendant in a strict-liability claim based on a failure-to-warn theory has the right to have a jury determine whether its product was unreasonably dangerous [because of inadequate warnings]." No. 448 EAL 2015, 2016 WL 381069 (Pa. Feb. 1, 2016) at *1. Currently, however, the Pennsylvania Supreme Court has not extended *Tincher* to failure-to-warn claims. Therefore, this Court will continue to apply *Mackowick* in failure-to-warn cases, which requires the Court to make the initial determination on the adequacy of the warning.

    2.    *The adequacy of the warning on the T130 Shaper*

To determine whether a warning is sufficient, courts under *Mackowick* must decide whether the warning "adequately notifies the intended users of the *unobvious* dangers inherent in the product." 575 A.2d at 102. To this end, the Court should ask: (1) whether the dangers are obvious; and (2) if not, whether the warning adequately notifies intended users of any unobvious dangers inherent in the product. There is no duty to warn of obvious dangers, and "[t]he duty to adequately warn does not require the manufacturer to educate a neophyte in the principles of the product." *Id.*

The first question is whether the dangers inherent in the T130 Shaper were open and obvious. Certainly the danger posed by the spinning blade was open and obvious and required no

9

warning. Courts in Pennsylvania and other jurisdictions have held in similar situations that spinning blades pose an obvious hazard. In *Riley v. Warren Manufacturing, Inc.*, the Pennsylvania Superior Court found that there was no duty to warn, because, "the hazard in question, i.e., the blades, was obvious and known to the commercial grain haulers who used the product." 688 A.2d 221 n.6 (Pa. Super. Ct. 1997). In *Hagans v. Oliver Machinery Co.*, the Fifth Circuit stated that, "One can imagine no more obvious danger than that posed by the jagged edge of a circular saw blade spinning at 3600 revolutions per minute." 576 F.2d 97, 102 (5th Cir. 1978); *see also Fletcher v. Raymond Corp.*, 623 A.2d 845 (Pa. Super. Ct. 1993) (holding that a forklift manufacturer has no duty to warn users not to ride on the forklift without holding onto the sides).

Even if the danger posed by the spinning blade was obvious, Hatcher argues, the danger of operating the machine without the blade guard was not obvious. He points out that nobody at Timberlane knew that the blade guard existed, and he contends that SCM had a duty to warn users of the increased danger posed by operating the machine without the blade guard. (Pl.'s Mem. at 10.) For the purposes of this motion, the Court will assume that neither the absence of the blade guard nor the increased risk of operating the machine without the blade guard was obvious. However, a product is only defective for lack of warnings if it is "unreasonably dangerous" without warnings. *Baron*, 124 A.3d at 355. The record shows, and Hatcher does not dispute, that Timberlane employees used the machine for twenty-five years without the blade guard without incident. (Def.'s Statement of Undisputed Facts ¶ 40.) In fact, Hatcher does not provide any admissible evidence that the T130 Shaper was unreasonably dangerous without the blade guard. For this reason, this Court would grant summary judgment to SCM whether or not the Pennsylvania Supreme Court extended *Tincher* to failure-to-warn claims, because Hatcher

has not introduced sufficient evidence for a jury to find that the product was unreasonably dangerous without a warning.

More importantly, SCM provided adequate warnings. In particular, the warning on the machine, "DON'T RUN THE MACHINE WITHOUT NECESSARY SAFETY GUARDS," was sufficient to alert the operator that the machine was accompanied by safety guards. This warning called attention to the existence of the safety guards, and the manual explained in appropriate detail how to use each of them, including the blade guard. (*Id.* ¶¶ 15-16.) Hatcher admits that he never read the existing warnings on the machine or the manual, even though he knew the manual was available at the plant. (*Id.* ¶ 37.) Hatcher admits that if he had read the manual, he would have known how to use the blade guard. (*Id.* ¶ 38.)

Even though he did not read the existing warnings or the manual, Hatcher argues that SCM should have provided pictorial warnings, relying, for this argument, on Clauser's report, which is not competent for consideration for the reasons described above. (Clauser Rep. at 3.) Even if the report were competent for consideration, the alternate warnings suggested by Hatcher are only useful if the current warning and the accompanying manual are "blatantly ignored." *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997). As the Pennsylvania Supreme Court stated in *Davis v. Berwind Corp.*, Hatcher is "in effect suggesting that we require a manufacturer to warn against dangers that may arise if the stated warnings are not heeded." *Id.* at 191. Finally, there is a good reason that manufacturers do not simply put all of the information on the manual onto warning stickers on the machine. In a similar case, a Pennsylvania court held that duplicating the instructions from the manual onto a machine could "create adverse consequences to potential users . . . if such a single warning would diminish the likelihood of an operator reading the manual so as to become aware of all of the safety requirements." *Mitchell v. Modern*

*Handling Equip. Co.*, Civ. A. No. 2637, 1999 WL 1825272, at *5 (Pa. Com. Pl. June 11, 1999), *aff'd*, 748 A.2d 1260 (Pa. Super. Ct. 1999).

This Court holds that Hatcher cannot recover for a failure to warn because the danger of the spinning blade was obvious, precluding any duty to warn. Moreover, the warnings provided on the machine and in the accompanying manual were adequate to alert the operator of any unobvious dangers in using the machine without the blade guard.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. An order consistent with this Memorandum will be docketed separately.